# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL SHIRING CAINE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 02:12-cv-791 |
| | ) | |
| CAROLYN W. COLVIN, [1] | ) | |
| ACTING COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER OF COURT

March 12, 2013

**I.  INTRODUCTION**

Daniel Shiring Caine ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final determination of the Commissioner of Social Security ("Defendant" or "Commissioner") which denied his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 – 433 ("Act").  This matter comes before the court on cross motions for summary judgment.  (ECF Nos. 9, 12).  The record has been developed at the administrative level.  For the following reasons, the decision of the ALJ will be AFFIRMED.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 24(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue, as the Defendant in this suit.  No further action needs be taken to continue this suit by reason of the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## II. PROCEDURAL HISTORY

Plaintiff filed for DIB with the Social Security Administration on April 20, 2009, claiming a disability onset date of January 6, 2001. (R. at 104 – 10)[2]. Plaintiff's alleged inability to work resulted from limitations stemming from back pain and depression. (R. at 121). His date last insured for DIB purposes was September 30, 2006. (R. at 129). Plaintiff was initially denied benefits on July 22, 2009. (R. at 53 – 62). A hearing was held before Administrative Law Judge Barbara Artuso ("ALJ") on August 10, 2010. Plaintiff, represented by counsel, testified, as did Linda Dezack, an impartial vocational expert. (R. at 23 – 48). The ALJ issued her decision in which she denied benefits to Plaintiff on August 26, 2010. (R. at 9 – 22). Plaintiff filed a request for review of the ALJ's decision by the Appeals Council, which request was denied on May 11, 2012, thereby making the decision of the ALJ the final decision of the Commissioner. (R. at 1 – 6).

Plaintiff filed his Complaint in this Court on June 15, 2012. (ECF No. 3). Defendant filed her Answer on September 10, 2012. (ECF No. 6). Cross motions for summary judgment followed. The matter has been fully briefed and is ripe for disposition.

## III. STATEMENT OF THE CASE

### A. General Background

Plaintiff was born on September 22, 1959, was fifty (50) years of age at the time of his administrative hearing, and was forty one (41) years of age at the time of his alleged disability onset date. (R. at 31, 104). He graduated from high school, and has no post-secondary education or vocational training. (R. at 31). Plaintiff was self-employed as the owner of an auto-body and

---

[2] Citations to ECF Nos. 7 – 7-10, the Record, *hereinafter*, "R. at __."

towing company from 1983 until 2001. (R. at 122). Plaintiff declared bankruptcy following an automobile accident and subsequent surgery on his spine that allegedly left him unable to work. (R. at 33 – 34). In the year before his administrative hearing, Plaintiff completed odd-jobs for a friend to boost his income. (R. at 32 - 35). Prior to that time, he had relied upon his father for income. (R. at 34). He maintained his own health insurance. (R. at 33). Plaintiff lived in a house with a girlfriend. (R. at 32).

### B. Treatment Notes of Primary Care Physician

Plaintiff's primary care physician was Robert Crossey, D.O. Plaintiff was under Dr. Crossey's care between February 2005 and June 2010. (R. at 187 – 246, 270 – 88). At the first visit with Dr. Crossey, on February 8, 2005, Plaintiff was noted to suffer from chronic back pain. (R. at 246). Nothing more was indicated in the treatment note. (R. at 246). Plaintiff received a back adjustment, and was prescribed Oxycontin and Oxycodone for pain relief. (R. at 246). This pattern of treatment continued – largely unchanged – through the end of 2005. (R. at 233 – 46).

Treatment notes in the following years were similarly lacking in significant description of medical findings, aside from diagnoses of back pain, and the use of spinal adjustment (osteopathic manipulative treatment or "OMT") and narcotics for pain management. (R. at 187 – 246, 270 – 88). Dr. Crossey typically noted that Plaintiff experienced "good results" with OMT. (R. at 187 – 246, 270 – 88). His strength was frequently found to be normal, as was his gait and station. (R. at 187 – 246, 270 – 88). Dr. Crossey noted, in June 2009, that Plaintiff had to take pain medications often in order to work. (R. at 283). In August 2009, Plaintiff informed Dr. Cohen that he was trying to work, but found it difficult due to his back pain. (R. at 287). In June

2010, the last treatment note on record, Dr. Crossey wrote that Plaintiff struggled to get through the day due to his pain. (R. at 270).

Also in June 2010, Dr. Crossey completed a Mental Status Questionnaire and Physical Residual Functional Capacity Assessment ("RFC") for Plaintiff. In the Mental Status Questionnaire, Dr. Crossey diagnosed Plaintiff with depression and anxiety, and indicated that he had been treated with Zoloft. (R. at 289 – 91). Despite experiencing only mild to moderate limitations in his functional capacity as a result of his impairments, Dr. Crossey believed Plaintiff would miss at least ten days of work per month. (R. at 289 – 91). He ultimately concluded that Plaintiff would be unable to sustain full-time work. (R. at 289 – 92).

The RFC completed by Dr. Crossey included diagnoses of chronic lower back pain and leg weakness. (R. at 292 – 94). As a result, Dr. Crossey noted that Plaintiff would be able to stand and walk no more than two hours of an eight hour work day, sit no more than one hour, lift no more than five pounds, and could not perform pushing, pulling, or fine manipulation. (R. at 292 – 94). Plaintiff would also need to avoid the use of foot pedals. (R. at 292 – 94). He could not bend, squat, crawl, or climb. (R. at 292 – 94). Plaintiff's physical limitations would cause him to be absent from work at least fifteen days of every month. (R. at 292 – 94). Dr. Crossey believed that Plaintiff would not be able to sustain full-time employment. (R. at 292 – 94).

**C. Other Medical Notes**

A physical examination subsequent to admission to Forbes Regional Hospital for abdominal pain in August 2008 revealed that Plaintiff had full range of motion and full strength in all extremities. (R. at 145 – 46).

Plaintiff sought treatment with neurosurgeon David Cohen, M.D., on November 25, 2008, for back and left leg pain. (R. at 162 – 63). Dr. Cohen noted that Plaintiff had

4

experienced chronic back pain since a lumbar microdiscectomy in June 2001. (R. at 162 – 63). Plaintiff reportefd that he did feel some relief as a result of that surgery. (R. at 162 – 63). In his Patient Registration form, Plaintiff indicated that symptoms of sharp pain in the left hip area, shooting pain in the left leg, and numbness and aching in the left leg and foot began on August 25, 2008. (R. at 175). Sitting, bending, and crouching worsened the pain. (R. at 175).

Upon physical examination, Dr. Cohen noted that Plaintiff had no pain on palpation of the lumbar spine. (R. at 162 – 63). He had normal motor strength in all muscle groups of the lower extremities, though he had some pain with movement of the left leg. (R. at 162 – 63). A sensory exam was grossly normal. (R. at 162 – 63). Based upon diagnostic imaging results available at the time, Dr. Cohen found that Plaintiff had very advanced degenerative changes throughout the lumbar spine, including loss of normal lumbar lordosis, multilevel disc bulges, and moderate canal stenosis. (R. at 162 – 63). Dr. Cohen did not believe that surgery would help Plaintiff's lower back pain, but that it could help his leg pain. (R. at 162 – 63). Plaintiff was to undergo electrodiagnostic testing and diagnostic imaging. (R. at 161 – 63).

Plaintiff followed up with Dr. Cohen on January 27, 2009. (R. at 159 – 60). Plaintiff's motor strength was again found to be normal in his lower extremities. (R. at 159 – 60). His lumbar flexion-extension x-rays were negative for instability in the lumbar spine. (R. at 159 – 60). Lower extremity EMG and nerve conduction velocity study results were negative for lumbar radiculopathy. (R. at 159 – 60). Plaintiff was ordered to undergo a left L5 nerve root block to determine if surgery would relieve his left leg pain. (R. at 159 – 60). The nerve root block was performed on February 12, 2009. (R. at 179). No further treatment records from Dr. Cohen appear in the record.

In a Psychiatric Review Technique completed on July 17, 2009, state agency evaluator Roger Glover, Ph.D., concluded that, based upon the available medical evidence on record, there was not sufficient evidence to find that Plaintiff suffered from any medically determinable mental health impairments. (R. at 251 – 63).

State agency evaluator Julie Kimbrell completed a Physical RFC of Plaintiff on July 21, 2009. (R. at 264 – 69). She found that the medical evidence of record supported a finding of chronic back pain. (R. at 264 – 69). However, based upon the treatment notes from Plaintiff's medical sources, Ms. Kimbrell found no functional limitations attributable to Plaintiff's impairment before his date last insured. (R. at 264 – 69).

### D. Administrative Hearing

At his hearing, Plaintiff described experiencing pain of a debilitating nature. (R. at 35). H testified that it was often difficult for him to get out of bed and he was unable to work for more than a couple of hours per day. (R. at 35). Two or three days out of every week, Plaintiff was unable to function normally. (R. at 35). Plaintiff explained that his primary care physician – Dr. Crossey – was his regular treating source for back pain, but that he had also consulted with Dr. Cohen with respect to possible surgical intervention. (R. at 36). Plaintiff stated that his principal pain relief medication was Oxycontin, but that he also used Fentanyl patches when his pain was most severe. (R. at 37). Even on normal days, he used large doses of medication. (R. at 37, 39).

Plaintiff testified that the work preclusive effects of his pain included grogginess from pain medication, the inability to move freely, difficulty sleeping, difficulty walking, bending, and sitting, and the need to frequently lie down. (R. at 37, 40). Plaintiff used an inversion table regularly to alleviate his pain. (R. at 37 – 38). Changes in weather exacerbated his pain, and

Plaintiff's pain was generally unabated. (R. at 37 – 38). While surgery on his lumbar spine following an automobile accident in 2001 provided some relief, the pain slowly worsened over the intervening years. (R. at 40 – 41). Plaintiff could no longer stand for more than an hour or two per day. (R. at 40).

After Plaintiff testified, the ALJ asked the vocational expert whether a hypothetical person of Plaintiff's age, educational background, and work experience could obtain full-time work existing in significant numbers in the national economy, if limited to light work with the option to alternate between sitting and standing every hour, no more than four hours of sitting or standing per day, respectively, no climbing of ladders, ropes, or scaffolds, no workplace hazards such as dangerous machinery or unprotected heights, only occasional climbing of ramps or stairs, only occasional balancing, stooping, kneeling, crouching, or crawling, and no exposure to extreme cold, heat, vibration, fumes, odors, dust, gasses, or poor ventilation. (R. at 45). In reply, the vocational expert explained that such a person would be capable of working as an "information clerk," with 68,145 such jobs available in the national economy, as a "furniture rental consultant," with 18,480 such jobs available, or as a "bicycle rental clerk," with 18,480 such jobs available. (R. at 46).

The ALJ modified the hypothetical to include the need to lie down three times per day for twenty to thirty minutes. (R. at 46). The vocational expert responded that such a person would not be capable of full-time work. (R. at 46). The vocational expert went on to state that a hypothetical person could miss work no more than five to seven days per year. (R. at 46).

## IV.  STANDARD OF REVIEW

To be eligible for social security benefits under the Act, a claimant must demonstrate to the Commissioner that he or she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §423(d)(1)(A); *Brewster v. Heckler,* 786 F. 2d 581, 583 (3d Cir. 1986). When reviewing a claim, the Commissioner must utilize a five-step sequential analysis to evaluate whether a claimant has met the requirements for disability. 20 C.F.R. §§ 404.1520, 416.920.

The Commissioner must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or a combination of impairments that is severe; (3) whether the medical evidence of the claimant's impairment or combination of impairments meets or equals the criteria listed in 20 C.F.R., Pt. 404, Subpt. P, App'x 1; (4) whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Barnhart v. Thomas*, 540 U.S. 20, 24 – 25 (2003). If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given claimant's mental or physical limitations, age, education, and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Doak v. Heckler*, 790 F. 2d 26, 28 (3d Cir. 1986).

Judicial review of the Commissioner's final decisions on disability claims is provided by statute, and is plenary as to all legal issues. 42 U.S.C. §§ 405(g)[3], 1383(c)(3)[4]; *Schaudeck v.*

---

[3]  Section 405(g) provides in pertinent part:

8

*Comm'r of Soc. Sec.*, 181 F. 3d 429, 431 (3d Cir. 1999). Section 405(g) permits a district court to review the transcripts and records upon which a determination of the Commissioner is based; the court will review the record as a whole. *See* 5 U.S.C. §706. The district court must then determine whether substantial evidence existed in the record to support the Commissioner's findings of fact. *Burns v. Barnhart,* 312 F. 3d 113, 118 (3d Cir. 2002).

Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. *Ventura v. Shalala*, 55 F. 3d 900, 901 (3d Cir. 1995) (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)). If the Commissioner's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); *Richardson,* 402 U.S. at 390. When considering a case, a district court cannot conduct a *de novo* review of the Commissioner's decision nor re-weigh the evidence of record; the court can only judge the propriety of the decision in reference to the grounds invoked by the Commissioner when the decision was rendered. *Palmer v. Apfel*, 995 F. Supp. 549, 552 (E.D. Pa. 1998); *S.E.C. v. Chenery Corp.*, 332 U.S. 194, 196 – 97 (1947). The court will not affirm a determination by substituting what it considers to be a proper basis. *Chenery*, 332 U.S. at 196 – 97. Further, "even where this court acting *de novo* might have reached a different conclusion . . . so long as the agency's factfinding is supported by substantial

---

> Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action ... brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business

42 U.S.C. § 405(g).

4  Section 1383(c)(3) provides in pertinent part:
> The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.

42 U.S.C. § 1383(c)(3).

9

evidence, reviewing courts lack power to reverse either those findings or the reasonable regulatory interpretations that an agency manifests in the course of making such findings." *Monsour Medical Center v. Heckler*, 806 F. 2d 1185, 1190 – 91 (3d. Cir. 1986).

## V. DISCUSSION

The ALJ concluded that Plaintiff suffered from severe medically determinable impairments in the way of degenerative disc disease of the lumbar spine, asthma, and allergies. (R. at 14). Due to these impairments, the ALJ concluded that Plaintiff would only be capable of light work allowing for alternating between sitting, standing, and walking, not to exceed four hours of any work day in any one position, and involving no climbing of ladders, ropes, and scaffolds, no exposure to workplace hazards, only occasional climbing of ramps and stairs, only occasional balancing, stooping, kneeling, crouching, and crawling, and no exposure to extreme heat and cold, vibration, fumes, odors, dusts, gases, and poor ventilation. (R. at 15). The ALJ noted that, in spite of these functional limitations, the vocational expert provided a list of full-time jobs existing in significant numbers in the national economy for which a person of Plaintiff's limited abilities would qualify. (R. at 18). As such, Plaintiff was not eligible to receive DIB. (R. at 19).

Plaintiff's sole point of contention with respect to the ALJ's decision was that she erroneously relied upon the findings of a state agency evaluator without a medical degree, as opposed to the findings of Dr. Crossey – a licensed physician – whose physical limitations findings would have undoubtedly rendered Plaintiff incapable of all full-time work. (ECF No. 10 at 5 – 8). Defendant counters that substantial evidence supported the ALJ's rejection of the anomalous, severe functional limitations findings of Dr. Crossey, and that the ALJ did not err in

basing her disability determination upon the remainder of the medical record, as well as the state agency evaluator's opinion as to Plaintiff's functional limitations. (ECF No. 13 at 9 – 13).

With respect to Dr. Crossey's physical RFC findings, it is true that a treating physician's opinions may be entitled to great weight – considered conclusive unless directly contradicted by evidence in a claimant's medical record – particularly where the physician's findings are based upon "continuing observation of the patient's condition over a prolonged period of time." *Brownawell v. Comm'r of Soc. Sec.*, 554 F. 3d 352, 355 (3d Cir. 2008) (quoting *Morales v. Apfel*, 225 F. 3d 310, 317 (3d Cir. 2000)); *Plummer v. Apfel*, 186 F. 3d 422, 429 (3d Cir. 1999) (citing *Rocco v. Heckler* 826 F. 2d 1348, 1350 (3d Cir. 1987)). However, "the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." *Chandler v. Comm'r of Soc. Sec.*, 667 F. 3d 356, 361 (3d Cir. 2011) (quoting *Brown v. Astrue*, 649 F. 3d 193, 197 n. 2 (3d Cir. 2011)). A showing of contradictory evidence and an accompanying explanation will allow an ALJ to reject a treating physician's opinion outright, or accord it less weight. *Brownawell*, 554 F. 3d at 355. Moreover, a medical opinion is not entitled to any weight if not supported by objective evidence in the medical record. *Plummer*, 186 F. 3d at 430 (citing *Jones v. Sullivan*, 954 F. 2d 125, 129 (3d Cir. 1991)).

Presently, the ALJ provided substantial evidence to discredit the severe findings in the physical RFC completed by Dr. Crossey by citing to a medical treatment record that never reflected the degree of limitation espoused by Dr. Crossey in his assessment. Indeed, the medical record is rather sparse. (R. at 15 – 17). Dr. Crossey did not regularly treat Plaintiff's back until 2005, despite claimed disability beginning in January 2001. (R. at 15 – 17). Dr. Crossey treated Plaintiff with only OMT and pain medications. (R. at 15 – 17). A referral to Dr. Cohen revealed significant degenerative disease in Plaintiff's spine, but no evidence of further

11

treatment for Plaintiff's back pain. (R. at 15 – 17). As the ALJ noted, Plaintiff never attended a pain management clinic, he did not undergo aggressive treatment, Dr. Cohen found no evidence of decreased motor strength, and diagnostic studies did not reveal any radiculopathy. (R. at 15 – 17). The Court finds that this evidence was sufficient to rebut Dr. Crossey's severe limitations findings.

Further, while Plaintiff's argument with regard to the ALJ's treatment of Ms. Kimbrell's physical RFC at first blush has merit, it is ultimately not availing. The ALJ stated in her decision that Ms. Kimbrell's opinion was "considered a medical opinion," and was "entitled to some weight." (R. at 17). However, this Court notes that "the conclusions of an evaluator whose qualifications are unknown . . . does not constitute substantial evidence." *Henderson v. Astrue*, 887 F. Supp. 2d 617 (W.D. Pa. 2012). The Social Security Administration's own policy prohibits giving any evidentiary weight to such an opinion if the state agency evaluator was not an acceptable medical source. *Stewart v. Astrue*, 2012 WL 5494662 at *5 – 6 (E.D. Pa. Nov. 13, 2012) (*citing Dewey v. Astrue*, 509 F. 3d 447, 449 – 50 (8th Cir. 2007); *Kempel v. Astrue*, 2010 WL 58910 at *7 (D. Kan. Jan. 4, 2010); *Stanley v. Astrue*, 2009 WL 3060394 at *1 (S.D. Fla. Sept. 24, 2009); *Foxx v. Astrue*, 2009 WL 2899048 at *7 (S.D. Ala. Sept. 3, 2009); *Johnson v. Astrue*, 2009 WL 1521843 at *2 (E.D. Mo. May 29, 2009); *Ky v. Astrue*, 2009 WL 68760 at *3 (D. Colo. Jan. 8, 2009)).

Yet, if there was error committed by the ALJ in according some weight to Ms. Kimbrell's physical RFC, the Court finds such error was harmless. In spite of the technical correctness of Plaintiff's argument, the set of facts provided by Plaintiff do not lend his disability claim adequate support. *Brown v. Astrue*, 649 F. 3d 193, 195 (3d Cir. 2011). As discussed by the ALJ, there is no objective support in Plaintiff's scant medical record for the severity of Dr. Crossey's

12

findings in his physical RFC of June 2010. Additionally, even if Dr. Crossey's physical RFC was to be given full weight, there was no indication as to the time period to which the assessment applied, no mention of Plaintiff's capabilities prior to, or on, his date last insured on September 30, 2006, and certainly no mention of Plaintiff's capabilities at the time he allegedly become disabled on January 6, 2001. As such, the Court hereby declines to remand this matter to the SSA.

## VI. CONCLUSION

Based upon the foregoing, substantial evidence supported the ALJ's determination that Plaintiff was not disabled under the Act on or before his date last insured for DIB: September 30, 2006. Accordingly, Plaintiff's Motion for Summary Judgment will be denied; Defendant's Motion for Summary Judgment will be granted; and, the decision of the ALJ will be affirmed. An appropriate Order follow.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANIEL SHIRING CAINE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 02:12-cv-791 |
| ) | |
| CAROLYN W. COLVIN, ) | |
| ACTING COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

## ORDER OF COURT

**AND NOW**, this 12th day of March, 2013, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED, AND DECREED** that:

1. Plaintiff's Motion for Summary Judgment (ECF No. 9) is DENIED.

2. Defendant's Motion for Summary Judgment (ECF No. 12) is GRANTED.

3. The Clerk will docket this case as closed.

BY THE COURT:

s/ Terrence F. McVerry
United States District Judge

cc: Lindsay Fulton Osterhout, Esq**.**
Email: lindsay@mydisabilityattorney.com

Michael Colville
Assistant U.S. Attorney
Email: Michael.colville@usdoj.gov